## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE LUIS QUIROZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>       v.<br><br>7-ELEVEN, INC.,<br><br>                                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jose Luis Quiroz brings this Class Action Complaint against 7-Eleven, Inc. ("7-Eleven" or "Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to his own actions and upon information and belief and an investigation of counsel as to all other matters:

### INTRODUCTION

1.      This class action arises out of Defendant's collection, storage, and use of Plaintiff's and the Class's (defined below) biometric identifiers[1] and biometric information[2] (referred to collectively as "Biometric Data") without obtaining informed written consent or providing consumers with data retention and destruction policies.

2.      Biometric Data is particularly sensitive personal information.  As the Illinois Legislature has found, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c) (Biometric Information Privacy Act

---

[1]      "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  740 ILCS 14/10.

[2]      "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."  *Id.*

1

or "BIPA").   "For  example,  social  security  numbers,  when  compromised,  can  be  changed.
Biometrics, however, are biologically unique to the individual; therefore, once compromised, the
individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from
biometric-facilitated transactions."  *Id.*

3.      In recognition of these concerns over the security of individuals' Biometric Data,
the Illinois Legislature enacted BIPA, which provides, among other things, that a private entity
may not obtain and/or possess an individual's Biometric Data unless it:  (1) informs that person
(or their representative) in writing that a biometric identifier or biometric information is being
collected or stored;[3] (2) informs that person in writing of the specific purpose and length of term
for which a biometric identifier or biometric information is being collected, stored, and used;[4] (3)
receives a written release from the person (or their representative) for the collection of his or her
biometric  identifier  or  information;[5]  and  (4)  publishes  publicly-available  written  retention
schedules and guidelines for permanently destroying Biometric Data.[6]  Further, the entity must
store, transmit, and protect from disclosure all Biometric Data using the same standard of care in
the industry and in a manner at least as protective as the means used to protect other confidential
and sensitive information.[7]  Finally, no private entity may sell, lease, trade, or otherwise profit
from a person's or customer's Biometric Data.[8]

4.      In direct violation of each of the foregoing provisions of §15 of BIPA, as alleged
here, Defendant is actively collecting, storing, and using — without providing notice, obtaining

---

[3]      740 ILCS 14/15(b)(1).
[4]      740 ILCS 14/15(b)(2).
[5]      740 ILCS 14/15(b)(3).
[6]      740 ILCS 14/15(a).
[7]      740 ILCS 14/15(e).
[8]      740 ILCS 14/15(c).

informed written consent, or publishing data retention policies — the Biometric Data of thousands of Illinois residents who have entered 7-Eleven stores.

5.      7-Eleven locations in Illinois are outfitted with cameras and advanced video surveillance systems that — unbeknownst to customers — surreptitiously collect, capture, possess, or otherwise obtain Biometric Data.

6.      7-Eleven does not notify customers of this fact prior to store entry, nor does it obtain consent prior to capturing and collecting its customers' Biometric Data.  Further, 7-Eleven does not provide a publicly available policy establishing a retention schedule and guidelines for permanently destroying this Biometric Data.

7.      7-Eleven has been investigated for this conduct in other countries.  In 2021, the Australian Information Commissioner and Privacy Commissioner found that 7-Eleven had interfered with customers' privacy by collecting their face prints without their information or consent.[9]  Specifically, the Commission found that 7-Eleven:  collected sensitive information in breach of Australian Privacy Principle 3.3, in circumstances where the collection was not reasonably necessary for its functions and activities, and 7-Eleven had not obtained valid consent and did not take reasonable steps to notify individuals about the facts and circumstances of collection, or the purpose of collecting their facial images and faceprints through the customer feedback mechanism, in breach of Australian Privacy Principle 5.1.[10]

---

[9]      https://www.oaic.gov.au/updates/news-and-media/oaic-finds-against-7-eleven-over-facial-recognition (last accessed May 5, 2022).

[10]      *Id.*

3

8.      Additionally, 7-Eleven has acknowledged that is has been using facial recognition technology at its stores in Thailand since 2018.[11]  7-Eleven has also used such technology at its stores in China since at least May 2019.[12]

9.      BIPA confers on Plaintiff and all other similarly situated Illinois residents a right to know about the inherent risks of Biometric Data storage and collection, and a right to know how long such risks will persist.

10.      Moreover, the collection of this Biometric Data violates certain statutory and common law rights of consumers.  For example, the Illinois Constitution states:  "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and ***privacy***."  (Emphasis added).

11.      Defendant failed to comply with its duties under Illinois law.  7-Eleven never adequately disclosed to its customers of its Biometric Data collection practices, never obtained written consent from any of its customers regarding its Biometric Data practices, and never provided any data retention or destruction policies to any of its customers.  Moreover, 7-Eleven invaded Plaintiff's and the Class's privacy through the unauthorized collection, retention, and use of Plaintiff's Biometric Data.

12.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Illinois residents.

13.      Plaintiff also brings this action to recover statutory damages for Defendant's unauthorized collection, storage, and use of these individuals' Biometric Data.

---

[11]      https://www.businessinsider.com/7-eleven-facial-recognition-technology-introduced-in-thailand-2018-3.  (Last accessed May 5, 2022).
[12]      https://asia.nikkei.com/Business/China-tech/Pay-with-your-face-100m-Chinese-switch-from-smartphones (last accessed May 6, 2022).

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. §1332(d), because: (1) the proposed class consists of over 100 members; (2) the parties are minimally diverse, as members of the class of plaintiffs are citizens of a state different from Defendant; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendant because 7-Eleven owns, operates, or franchises hundreds of 7-Eleven stores in the state of Illinois. Defendant used and disseminated data derived directly from Illinois consumers, including Plaintiff, and exposed residents of Illinois to ongoing privacy risks within Illinois based on the collection, capture, obtainment, disclosure, redisclosure, and dissemination of Biometric Data. Furthermore, the images and recordings Defendant used for the unlawful collection, capture, and obtainment of Biometric Data were taken at 7-Eleven stores located in the state of Illinois. Defendant knew, or should have known, that its collection, capture, obtainment, disclosure, redisclosure, and dissemination of impacted individuals' Biometric Data would injure Illinois residents and citizens. Defendant knew or had reason to know that collecting, storing, using, disclosing, and disseminating Illinois citizens' and residents' Biometric Data without providing the requisite notice or obtaining the requisite consent would deprive Illinois citizens and residents of their statutorily protected privacy rights, neutralize Illinois citizens' and residents' ability to control access to their Biometric Data, and expose Illinois residents to potential surveillance and other privacy harms as they went about their lives within the State.

16.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims occurred here.

## PARTIES

17.     Plaintiff Jose Luis Quiroz is a citizen and resident of Illinois.  Plaintiff visited the 7-Eleven store located at 600 South Frontenac Street, Aurora, Illinois and others in the State dozens of times over the past three years.

18.     Defendant 7-Eleven, Inc. is a Texas corporation with its corporate headquarters located in Irving, Texas.

## FACTUAL ALLEGATIONS

### I.     ILLINOIS'S BIOMETRIC INFORMATION PRIVACY ACT

19.     In 2008, the Illinois Legislature enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it comes to biometric information."  Illinois House Transcript, 2008 Reg. Sess. No. 276.  BIPA makes it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

20.     To facilitate these informed notice and consent provisions, Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric

> information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

21.     To enforce BIPA's requirements, the statute includes a private right of action authorizing "[a]ny person aggrieved by a violation" to sue and recover for each violation damages of $1,000 for a negligent violation, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief.  740 ILCS 14/20.

22.     As alleged below, 7-Eleven's practice of collecting, storing, and using individuals' Biometric Data without obtaining informed written consent violates all three prongs of §15(b) of BIPA.  Additionally, 7-Eleven's failure to provide a publicly available written policy regarding a schedule and guidelines for the retention and permanent destruction of individuals' Biometric Data also violates §15(a) of BIPA.

## II.     7-ELEVEN'S BUSINESS OPERATIONS AND SURVEILLANCE SYSTEMS

23.     7-Eleven is the largest convenience store retailer in the world, operating, franchising, or licensing over 77,000 stores, with more than 9,000 locations in the U.S. alone. There are currently 336 7-Eleven stores in the state of Illinois, and 110 are located in Chicago.[13]

24.     Every 7-Eleven store is outfitted with cameras and video surveillance, and many of them have the capability to collect Biometric Data.

25.     Unbeknownst to its customers, 7-Eleven's security systems surreptitiously collect, capture, possess, or otherwise obtain customers' Biometric Data without notifying them and without obtaining their consent.

---

[13]     https://www.scrapehero.com/location-reports/7eleven-USA/(last accessed May 5, 2022).

26.    7-Eleven has disregarded its customers' privacy rights in other countries. Specifically, in 2021, the Australian Information Commissioner and Privacy Commissioner found that 7-Eleven had interfered with customers' privacy by collecting their face prints without their information or consent at 700 7-Eleven stores in Australia over a one-year period.[14]

27.    Additionally, 7-Eleven has acknowledged that it has been using facial recognition technology at its stores in Thailand since 2018.[15]  7-Eleven has also used such technology at its stores in China since at least May 2019.[16]

*Use of Click-It, Inc. System*

28.    Based on Plaintiff's initial investigation, numerous different 7-Eleven locations in Chicago use surveillance systems provided by Click-it, Inc. ("Clickit"), an intelligent video solutions provider.[17]

29.    Clickit possesses advanced video management systems capable of facial recognition and capturing biometric identifiers, as confirmed in the text of Clickit's Patent which states, "the present disclosure goes beyond facial recognition software (which may be utilized in conjunction herewith) and provides additional algorithms and analytics for tracking purposes." Clickit Patent No. US 9,773,163 B2.[18]

---

[14]    https://www.oaic.gov.au/updates/news-and-media/oaic-finds-against-7-eleven-over-facial-recognition (last accessed May 5, 2022).
[15]    https://www.businessinsider.com/7-eleven-facial-recognition-technology-introduced-in-thailand-2018-3 (last accessed May 5, 2022).
[16]    https://asia.nikkei.com/Business/China-tech/Pay-with-your-face-100m-Chinese-switch-from-smartphones (last accessed May 6, 2022).
[17]    https://www.youtube.com/watch?v=_nG8FxqVqzc (last accessed May 5, 2022).
[18]    It is important to note that Clickit's patent acknowledges, and purportedly attempts to address privacy concerns surrounding the technology's use of facial recognition or algorithms, providing that: "it is not necessary in certain instances that facial recognition be utilized to flag or track someone or something and the presently described system may be employed without facial recognition software or algorithms which may prove insensitive to certain moral, federal or local laws." Clickit Patent No. US 9,773,163 B2.

30.     In October 2019, Clickit's Sales Director confirmed that Clickit was introducing facial detection/recognition technology with its video monitoring service offerings.

31.     Furthermore, Clickit's Patent fails to specify under what circumstances its system may be used without employing facial recognition software or algorithms.

32.     Even when Clickit's technology is purportedly configured to operate without using "facial recognition software or algorithms," it still violates BIPA because it scans faces and recognizes facial features.[19]

33.     In an attempt to alleviate privacy concerns, Clickit states that the face scans and biometric information it collects can be deleted on a daily basis:  "video records of a particular person may be deleted on a daily basis to alleviate privacy concerns."

34.     Clickit's suggested strategy ignores the fact that the collection of Biometric Data — regardless of the amount of time it is stored, maintained, or anonymized — still violates BIPA. This is underscored by the fact that 7-Eleven store-fronts, interiors, and exteriors are not equipped with visible signs to notify customers that their Biometric Data will be captured or collected when they enter 7-Eleven stores.

35.     Furthermore, 7-Eleven's U.S. Privacy Policy does not make any mention of its stores using facial recognition software or algorithms, face scans, or collecting biometric information in any way.[20]

36.     Although 7-Eleven continues to use Clickit video surveillance systems at many of its U.S. locations, including at 7-Eleven stores in Chicago, to date, 7-Eleven has not disclosed whether it uses facial recognition technology in the U.S.

---

[19]     As Clickit's patent explains, "the system may simply be configured to recognize a particular person based on facial characteristics or any combination of other characteristics or individual features without correlating such features with an identification."

[20]     https://corp.7-eleven.com/corp/privacy (last accessed May 6, 2022).

***7-Eleven's Proprietary Technology***

37.     7-Eleven also has proprietary surveillance technology with facial recognition capabilities.   Its patent, No. US 11,004,219 B1, purports to create, among other things, a frictionless checkout that allows customers to "walk into the store, take items, and leave the store without stopping for the conventional checkout process."

38.     The text of the patent states:  "[7-Eleven's] tracking system uses sensors to capture images or videos of a shopper as they move within the store.  The tracking system may process the images or videos provided by the sensors to identify the shopper, the location of the shopper, and/or any items that the shopper picks up."  7-Eleven, Inc. Patent No. US 11,004,219 B1.

39.     The figure below details how 7-Eleven uses technology to track customers who enter its stores.





*FIG. 28*

***Use of Johnson Controls***

40.     In addition to its other surveillance systems, 7-Eleven also engages Johnson Controls and its various brands, including Sensormatic Solutions (also referred to as Tyco Integrated Security and Tyco Retail Solutions).[21]

---

[21]     https://www.sensormatic.com/-/media/project/jci-global/retail/sensormatic/page-specific-images/resources/case-study-2/r1906010_cs_7-eleven-enhances-security_kr-1.pdf (last accessed May 5, 2022).

11

41.     Johnson Controls has many patents, including "Building and security management system with augmented reality interface," Patent No. US 10,613,729 B2. As stated in its patent, "[Johnson Controls'] user detection module may perform various image analyses including, but not limited to, edge detection, shape detection, movement detection, facial recognition, iris recognition, biometric analysis (*e.g.*, gait analysis, etc.), and other similar analyses."

## III.     DEFENDANT VIOLATED ILLINOIS' BIOMETRIC INFORMATION PRIVACY ACT

42.     7-Eleven's continued use of Clickit's video surveillance systems at its Chicago stores demonstrates that 7-Eleven has violated and continues to violate BIPA. Despite Clickit's claim that it can configure its systems such that facial recognition or other algorithms are not used, the company's systems still recognize facial characteristics and features, which means it still performs facial recognition, and thereby captures, collects, and stores biometric data.

43.     This information, coupled with the verified facial recognition capability of 7-Eleven itself and its other major security vendor, the company's history of investing heavily in "keep[ing] a close eye on its stores — and the people who run them," use of secretive and exploitative tactics, willingness to violate privacy laws, and infringe on the privacy of its customers and employees alike, all point to the likelihood that 7-Eleven is indeed capturing, collecting, possessing, or otherwise obtaining Biometric Data from its Chicago customers without their information or consent, and in direct violation of the Illinois Biometric Information Privacy Act.

44.     Unbeknownst to the average consumer, and in direct violation of §15(b)(1) of BIPA, 7-Eleven scans, collects, and stores its customers biometric information and identifiers in an electronic database. This occurs when customers, or prospective customers, enter 7-Eleven

stores, and Defendant engages in this practice without ever informing anyone in writing that is using surveillance technology that scans, collects, and stores biometric information.

45.     In direct violation of §§15(b)(2) and 15(b)(3) of BIPA, 7-Eleven never informed Plaintiff and other Illinois residents who entered its stores — and were subjected to video surveillance recording therein — of the specific purpose and length of term for which their biometrics would be collected, stored, and used, nor did they obtain a written release from any of these individuals.

46.     In direct violation of §15(a) of BIPA, 7-Eleven does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information.

**A.      Plaintiff's Experience**

47.     Plaintiff is an Illinois resident who has been a 7-Eleven customer for many years and specifically recalls entering and shopping at 7-Eleven stores, including the 7-Eleven store located at 600 South Frontenac Street, Aurora, Illinois numerous times over the past three years.

48.     On information and belief, this particular location is equipped with Clickit's video surveillance system.

49.     Plaintiff did not know that 7-Eleven would collect, obtain, store, and/or use his biometric identifiers or biometric information.  Plaintiff did not give informed written consent to collect, obtain, store, and/or use his Biometric Data, nor was Plaintiff presented with or made aware of any publicly available retention schedule regarding his Biometric Data.

50.     Likewise, Plaintiff was never provided with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of his unique biometric identifiers and/or biometric information.

51.     By collecting, obtaining, storing, and using Plaintiff's Biometric Data without his consent, written or otherwise, 7-Eleven invaded Plaintiff's statutorily protected right to privacy in his Biometric Data.

52.     In direct violation of §§15(b)(2) and 15(b)(3) of BIPA, 7-Eleven never informed Plaintiff or other Illinois residents who had their Biometric Data collected of the specific purpose and length of time for which their Biometric Data would be collected, stored, and used, nor did 7-Eleven obtain a written release from these individuals.

53.     In direct violation of §15(a) of BIPA, 7-Eleven did not have written, publicly available policies identifying their retention schedules or guidelines for permanently destroying any of this Biometric Data.

### FRAUDULENT CONCEALMENT AND TOLLING

54.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of their unlawful conduct.   Throughout the Class Period, Defendant affirmatively and fraudulently concealed their unlawful conduct.

55.     Plaintiff and the Class members did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the hidden and ambiguous privacy policies and terms of use.

56.     Further, the very nature of Defendant's conduct was secret and self-concealing. Defendant used advanced video management systems capable of facial recognition and capturing Biometric Data and other technologies without adequately informing impacted individuals that their Biometric Data was being collected and potentially disseminated.

57.     As a result of Defendant's fraudulent concealment, all applicable statutes of limitations affecting the Plaintiff's and the Class members claims have been tolled.

## CLASS ALLEGATIONS

58.     **Class Definition**:  Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 ("Rule 23") and seek class certification of all claims for relief herein on behalf of a class defined as follows:

> All individuals who, while residing in the State of Illinois, had their Biometric Data collected, captured, received, or otherwise obtained and/or stored by Defendant.

The following are excluded from the Class:  (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (5) the legal representatives, successors, and assigns of any such excluded persons.

59.     **Numerosity**:  Members of the Class are so numerous that their individual joinder is impracticable.  Upon information and belief, members of the Class number in the thousands.  The precise size of the Class and Class members' identities are unknown to Plaintiff at this time but may be determined through discovery.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

60.     **Typicality**:  Plaintiff's claims are typical of the claims of the Class members because Plaintiff had his Biometric Data collected or otherwise obtained by 7-Eleven upon use of

their stores, and therefore, Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

61.     **Commonality and Predominance**:  Common and well-defined questions of fact and law exist as to all members of the Class and predominate over any questions affecting only individual class members.  These common legal and factual questions include, but are not limited to, the following:

a)   whether 7-Eleven collected or otherwise obtained Plaintiff's and the Class's Biometric Data;

b)   whether 7-Eleven properly informed Plaintiff and the Class that it collected, used, and stored their Biometric Data;

c)   whether 7-Eleven obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's Biometric Data;

d)   whether 7-Eleven developed and made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying Biometric Data when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

e)   whether 7-Eleven used Plaintiff's and the Class's Biometric Data to identify them;

f)   whether 7-Eleven's violations of BIPA were committed intentionally, recklessly, or negligently;

g)   whether Plaintiff and members of the Class sustained damages as a result of 7-Eleven's activities and practices referenced above, and, if so, in what amount; and

h)   whether 7-Eleven profited from the activities and practices referenced above, and, if so, in what amount.

62.     **Adequate Representation**: Plaintiff has retained competent counsel experienced in prosecuting complex consumer class action.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff and his counsel can fairly and adequately represent and protect the interests of the Class because their

interests do not conflict with the interests of the Class Plaintiff seeks to represent. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

63. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Moreover, even if every member of the Class could afford to pursue individual litigation, the Court system could not. Individual litigation of numerous cases would be unduly burdensome to the courts. Individualized litigation would also present the potential for inconsistent or contradictory judgments, and it would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with BIPA.

**COUNT I**
**Violation of 740 ILCS 14/1, *et seq.***
**(Against 7-Eleven)**
**(On Behalf of Plaintiff and the Class)**

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant 7-Eleven.

66.     BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:  (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ."  740 ILCS 14/15(b).

67.     Defendant 7-Eleven, Inc. is a Texas corporation and thus qualifies as a "private entity" under BIPA.  *See* 740 ILCS 14/10.

68.     Plaintiff and the Class members are individuals who had their biometrics collected and stored by 7-Eleven, Inc.  *See* 740 ILCS 14/10.

69.     7-Eleven, Inc. systematically collected, used, and stored Plaintiff's and the Class members' Biometric Data derived from Plaintiff's and the Class members' facial geometry without first obtaining the written release required by 740 ILCS 14/15(b)(3), and thereby uniformly invaded Plaintiff's and each Class member's statutorily protected right to privacy in their biometrics.

70.     7-Eleven, Inc. failed to properly inform Plaintiff or members of the Class in writing that their Biometric Data was being collected, stored, or otherwise obtained, and of the specific purpose and length of term for which those biometrics were being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

71. In addition, 7-Eleven, Inc. does not provide a written, publicly available retention schedule and guidelines for permanently destroying the Biometric Data of Plaintiff or the Class members, as required by BIPA. *See* 740 ILCS 14/15(a). 7-Eleven's failure to provide such a schedule and guidelines constitutes an independent violation of the statute.

72. Each instance in which 7-Eleven, Inc. collected, stored, used, or otherwise obtained Plaintiff's and/or members of the Class's Biometric Data as described herein constitutes a separate violation of the statutory right of Plaintiff and each Class member to keep private this Biometric Data, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

73. On behalf of themselves and members of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant 7-Eleven, Inc. to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $5,000 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, alternatively, statutory damages of $1,000 for each and every violation pursuant to 740 ILCS 14/20(1) if the violations are found to have been committed negligently; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing his counsel as Class Counsel;

B.      Declaring that the actions of 7-Eleven, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring that 7-Eleven ensures its collection, storage, and usage of Biometric Data complies with BIPA;

D.      Awarding Plaintiff and the Class statutory damages of $5,000 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000 for each and every violation pursuant to 740 ILCS 14/20(1) if the Court finds that Defendant's violations were negligent;

E.      Awarding Plaintiff and the Class reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: May 6, 2022                              Respectfully submitted,

                                                 *s/ Joseph P. Guglielmo*
                                                Joseph P. Guglielmo
                                                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                                The Helmsley Building
                                                230 Park Ave., 17th Floor
                                                New York, NY 10169
                                                Telephone: (212) 223-6444
                                                Facsimile:  (212) 223-6334
                                                jguglielmo@scott-scott.com

                                                Counsel for Plaintiff

20